UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAY A PELLEGRINI                                      CIVIL ACTION

VERSUS                                                      NO. 22-1178

MICHAEL TOFFOLI, ET AL.                    SECTION "R" (2)

## ORDER AND REASONS

Before the Court is plaintiff's motion to remand.[1]  Defendant Certain Underwriters of Lloyd's, London opposes the motion.[2]  For the foregoing reasons, the Court grants plaintiff's motion.

## I.    BACKGROUND

This case arises out of a dispute between business partners over plaintiff's investment in the acquisition of a property and casualty ("P&C") insurance company.  Plaintiff alleges that defendant Michael Toffoli, the owner and operator of Acadian Managers, LLC, a wholesale general insurance agency, was interested in buying a P&C insurance company and "sought [plaintiff] to invest in the acquisition" of such a company.[3]   At the

---

[1]    R. Doc. 9.
[2]    R. Doc. 21.
[3]    R. Doc. 1-2 at 2 ¶¶ 9-10.

time, Standard National Fire Insurance Company ("SNFIC") was attempting to sell its P&C insurance line.  Toffoli negotiated a purchase of SNFIC's P&C insurance line with the help of plaintiff's $3,000,000 investment, and in August of 2018, plaintiff and Toffoli formed an entity called Columbus Holdings, LLC ("Columbus Holdings") to own and operate the P&C line.[4]

Columbus Holdings was designated as the owner and operator of SNFIC.[5]  Plaintiff was a member and investor of Columbus Holdings, and Toffoli was the manager member and president/operator of Columbus Holdings, Columbus Underwriting, LLC, and SNFIC.[6]  In that capacity, Toffoli conducted the day-to-day operations of SNFIC.

Plaintiff contends that he made his initial $3,000,000 investment in Columbus Holdings based on Toffoli's representation that SNFIC "would obtain capital loss insurance to secure and protect" the investment.[7]  Plaintiff claims that Toffoli represented to him that there was "sufficient reinsurance to withstand any natural disasters in Louisiana."[8]  Toffoli allegedly assured

---

[4]    *Id.* at 4-5 ¶¶ 10-12.
[5]    *Id.* at 3 ¶ 13.
[6]    *Id.* ¶ 14.
[7]    *Id.* ¶ 16.
[8]    *Id.* ¶ 17.

plaintiff that plaintiff's investment would be insured or otherwise protected until his investment was recouped.[9]

Plaintiff alleges that Toffoli represented at a Board of Directors meeting in September of 2020 that SNFIC was "positioned . . . to withstand major catastrophes."[10]  Toffoli allegedly claimed that SNFIC had "purchased a little over 1 in 100-year probable maximum loss at $40 million."[11]  In August 2021, Hurricane Ida hit Louisiana.  Plaintiff contends that the initial assessment of liabilities from the Hurricane Ida claims exceeded $65 million. He allegedly learned that SNFIC maintained grossly insufficient reinsurance to cover the losses from the hurricane, contrary to Toffoli's representations.[12] Plaintiff further alleges that Toffoli did not insure plaintiff's initial investment as he said he would.[13]

The Louisiana Department of Insurance placed Columbus Holdings, Columbus Underwriters, LLC, and SNFIC were placed into receivership in the 19th Judicial District Court, Parish of East Baton Rouge.[14] The Louisiana Insurance Guaranty Association assumed control and responsibility for

---

9    *Id.* ¶ 18.
10   *Id.* at 4 ¶ 23.
11   *Id.*
12   *Id.* ¶ 25.
13   *Id.* ¶ 26.
14   *Id.* at 5 ¶ 27.

SNFIC policies, which plaintiff alleges resulted in his "uninsured and unprotected $3 million investment" being lost.[15]

Plaintiff filed this lawsuit in 22nd Judicial District Court, Parish of St. Tammany in February 2022.  He named as defendants Toffoli and Acadian Managers, LLC.[16]  He also named Certain Underwriters of Lloyd's, London ("Lloyd's"), which provided directors and officers ("D&O") insurance to Columbus Holdings, Columbus Underwriting, and SNFIC, pursuant to Louisiana's direct action statute.[17]   Finally, he named ABC Insurance Company, an unidentified insurance company that provided excess D&O insurance to Columbus Holdings, Columbus Underwriting, LLC, and SNFIC; and DEF Insurance Company, an unidentified insurance company that insured Acadian Managers, LLC.[18]  The thrust of plaintiff's complaint is that he would not have made this investment had he known "Toffoli would not obtain sufficient reinsurance to cover possible losses for the value of aggregate premiums and/or protect [plaintiff's] initial $3,000,000 investment."[19]  Plaintiff brings the following claims against defendants: (a) breach of fiduciary duty, (b) abuse of control, (c) gross management, (d)

---

[15]    *Id.* ¶ 28.

[16]    *Id.* at 1-2 ¶¶ 2, 5.

[17]    *Id.* ¶ 3.

[18]    *Id.* at 3 ¶¶ 4, 6.

[19]    *Id.* at 6 ¶ 36.

gross negligence, (e) failing to preserve corporate assets, (f) conflict of interest, and (g) unjust enrichment.[20]

Lloyd's removed the action to the Eastern District of Louisiana on the grounds of diversity jurisdiction.[21] Lloyd's contended that the amount in controversy exceeds $75,000 and that there is complete diversity of citizenship.[22] In particular, Lloyd's asserted that plaintiff is a citizen of Louisiana, Toffoli is a citizen of South Carolina, and Acadian Managers, LLC is a citizen of the states of which its members are citizens: New York, Virginia, Florida, and South Carolina.[23] As for its own membership, Lloyd's contended that there is one subscribing syndicate on the relevant insurance policy, Syndicate TAL 1183, consisting of corporate capital from its sole member, Talbot Capital. It contends that the key for diversity of citizenship purposes is the citizenship of the members of the syndicate that are liable for loss on the policy. This, Lloyd's contends, is Talbot Capital. Talbot Capital is incorporated and registered in England and Wales and has its principal place of business in London.[24] Lloyd's thus asserted that it is a citizen of the United Kingdom for purposes of this action. Lloyd's contended in the

---

[20]     *Id*. at 7 ¶ 40.
[21]     R. Doc. 1.
[22]     *Id*. at 2 ¶¶ 4, 8.
[23]     *Id*. at 2-3 ¶¶ 9, 11-12.
[24]     *Id*. at 2-3 ¶ 10.

alternative that it was improperly joined, so its citizenship should be disregarded.[25]

Plaintiff moved to remand on the grounds that there is not complete diversity of citizenship among the parties.[26]  In particular, he contends that Lloyd's failed to allege the citizenship of each of the "individual syndicates underwriting the Lloyd's policy."[27]  He argues in the alternative that because this is a direct action against Lloyd's in its capacity as the insurer for Columbus Holdings, Lloyd's adopts the citizenship of the insured under 28 U.S.C. 1332(c).[28]  It asserts that Lloyd's is thus non-diverse because for purposes of this action it must be treated as a citizen of the same states as Columbus Holdings: Louisiana and South Carolina.[29]

Lloyd's opposes the motion.[30]  The Court considers the parties' arguments below.

---

[25]    *Id.*

[26]    R. Doc. 9.

[27]    R. Doc. 9-1 at 2.

[28]    R. Doc. 28 at 3-5.

[29]    Because Columbus Holdings is an LLC, it has the citizenship of its members, plaintiff and Toffoli.  As discussed, *supra*, plaintiff is a citizen of Louisiana and Toffoli is a citizen of South Carolina.

[30]    R. Doc. 31.

6

## II.   LEGAL STANDARD

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a).  The removing party bears the burden of showing that federal jurisdiction exists.  *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).  In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed.  *See, e.g.*, *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, No. 95-668, 1995 WL 419901, at *2 (E.D. La. July 13, 1995).  Though the Court must remand the case to state court if at any time before the final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal.  28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants.  *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  Having a plaintiff and a defendant who are citizens of the same state ordinarily destroys complete diversity.  *See McLaughlin v.*

7

*Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004).  Therefore, when a non-diverse party is properly joined as a defendant, no defendant may remove the case under 28 U.S.C. § 1332.

A defendant may remove by showing that a non-diverse party was improperly joined.  *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004).  Because this is a narrow exception to the rule of complete diversity, the burden of demonstrating improper joinder is a heavy one.  *Id.* at 574.  A defendant may establish improper joinder by showing either: "(1) actual fraud in pleading jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse defendant."  *Id.*  at 573.  To determine whether the latter showing has been made, courts ask "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (quoting *Smallwood*, 385 F.3d at 573).

"In analyzing whether a plaintiff has demonstrated a reasonable possibility of recovery, the district court may 'conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine

whether the complaint states a claim under state law against the in-state defendant.'" *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 69 (5th Cir. 2010) (per curiam) (quoting *Smallwood*, 385 F.3d at 573).  The Fifth Circuit has explained that, "if a plaintiff can survive a Rule 12(b)(6) challenge for failure to state a claim, there is ordinarily no improper joinder." *Davidson*, 819 F.3d at 765 (citing *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013)).

As in the Rule 12(b)(6) context, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 239 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

The Court may take judicial notice of public records while conducting this 12(b)(6)-type analysis. *See Viking Constr. Grp., LLC et al. v. Satterfield*

& *Pontikes Constr. Grp., et al.*, No 17-12838, 2018 WL 398751, at *4 n.18 (E.D. La. Jan. 12, 2018); *Rantz v. Shield Coat, Inc.*, No. 17-3338, 2017 WL 3188415, at *5 (E.D. La. July 26, 2017). And if the plaintiff has misstated or omitted discrete facts relevant to the court's improper-joinder analysis, the court "may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573.

## III.  DISCUSSION

### A.    Complete Diversity

Because plaintiff brings only state-law claims, this Court has jurisdiction over this dispute only if there is complete diversity among the parties. 28 U.S.C. § 1332(a). It is undisputed that plaintiff is a citizen of Louisiana. As noted, Lloyd's maintains that the member(s) of a Lloyd's syndicate who are liable for any loss under the policy are key for determining diversity jurisdiction.[31] It argues that here, that is Talbot Capital, which is a citizen of the United Kingdom, not Louisiana, rendering remand proper.[32]

Lloyd's argument ignores 28 U.S.C. § 1332(c)(1), which provides that "in any direct action against the insurer of a policy or contract of liability

---

[31]    R. Doc. 31 at 6.

[32]    *Id.*

insurance . . . to which action the insured is not joined as a party-defendant,"
the insurer "shall be deemed a citizen" of every state of which the insured is
a citizen.   28 U.S.C. § 1332(c)(1).   Congress amended section 1332(c) to
include this provision in 1964.  *Gonzalez v. Gov't Empl. Ins. Grp.*, No. 99-
3707, 2000 WL 235236, at *2 (E.D. La. Feb. 28, 2000).   Before the
amendment, Louisiana and Wisconsin had direct action statutes that
permitted injured parties to sue insurance companies directly without
joining as a defendant the insured tortfeasor.  *Hernandez v. Travelers Ins.
Co.*, 489 F.2d 721, 723 (5th Cir. 1974).  As a result, federal courts were flooded
with lawsuits in which plaintiffs were empowered to sue foreign insurance
companies that insured the non-diverse tortfeasors rather than the non-
diverse tortfeasors themselves.  *Id.*   To address this burden, Congress
provided that in such direct actions, the insurance companies are deemed to
share the citizenship of the insured.   Senate Report No. 1308, which
accompanied the 1964 amendment, set forth its legislative purpose:

> The purpose of the proposed legislation is to amend section
> 1332(c) of title 28, United States Code, so as to eliminate under
> the diversity jurisdiction of the U.S. district courts, suits on
> certain tort claims in which both parties are local residents, but
> which, under a State 'direct action' statute, may be brought
> directly against a foreign insurance carrier without joining the
> local tort-feasor as a defendant.

*Gonzalez*, 2000 WL 235236, at *4 (quoting S. Rep. No. 1308 (1964), *reprinted in* 1964 U.S.C.C.A.N. 2778, 2778-79).  In other words, the purpose of the amendment was "primarily to relieve the overburdened dockets of federal courts in Louisiana." *Id.*

If this case is a "direct action" for purposes of the statute, Lloyd's will be deemed a citizen of every state in which the insured is a citizen.  The insured, Columbus Holdings, is a citizen of Louisiana and South Carolina. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("[T]he citizenship of an LLC is determined by the citizenship of all of its members.").[33] Accordingly, if this case is a "direct action," there is no complete diversity among the parties.

In his complaint, plaintiff contends that his claims against Lloyd's are brought pursuant to La. Rev. Stat. 22:1269, Louisiana's direct action statute, because the insured parties are currently in receivership in state court.[34] That statute provides, in relevant part:

> No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy.

---

[33]    R. Doc. 1 at 3 ¶¶ 11-12.
[34]    R. Doc. 1-2 at 3 ¶ 3.

La Rev. Stat. 22:1269(A).  It further states that "[t]he injured person . . . shall have a right of direct action against the insurer within the terms and limits of the policy."  La Rev. Stat. 22:1269(B)(1).

The statute "creates a contractual relationship which inures to the benefit of any and every person who might be negligently injured by the insured as completely as if such injured person had been specifically named in the policy."  *Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1022 (5th Cir. 2012).  It "evinces Louisiana's intent for the insolvency of the insured not to release the insurer from the payment of damages to injured parties."  *Id.* (internal quotation marks omitted).

"By its own terms, the direct action statute applies only to 'liability' insurance."  *First Nat. Bank of Louisville v. Lustig*, 975 F.2d 1165, 1166 (5th Cir. 1992).  The Louisiana Supreme Court has nevertheless held that the statute "is a mandate for a tort victim to bring a direct suit to recover damages for personal injury or corporeal property damage from the tortfeasor's insurer, regardless of whether the insurer has framed the policy as a liability or an indemnity contract."  *Id.* (quoting *Quinlan*, 575 So. 2d 336, 352 (La. 1990)).  When a plaintiff seeks to recover incorporeal damages, such as investment losses, "the way the insurer has framed the policy is determinative."  *Id.*   A tort victim seeking to recover incorporeal damages

13

may avail himself of the direct action statute unless the policy "unambiguously expresses the parties' intent that the insurance policy is a contract of indemnity against loss rather than a policy of insurance against liability." *Quinlan*, 575 So. 2d at 347.  When the contract is ambiguous, it is treated as a policy of insurance against liability, rather than a contract of indemnity.  *Id.* (construing "the policy to be one of liability" because "the insurance contract is ambiguous as to whether the parties intended that it insure against liability or indemnity against loss").  A contract is ambiguous when its terms "are susceptible of more than one reasonable interpretation." *Smith v. Western World Ins. Co.*, 134 So. 3d 1198, 1200 (La. App. 3d Cir. 2014).

The D&O policy here does not unambiguously express the parties' intent that it is a contract of indemnity against loss rather than a policy of insurance against liability.  *Id.*  The policy provides that the insurer "will indemnify" the insured "for Loss" arising "from any Claim."[35]  Although the contract uses the term "indemnify," the policy can be reasonably read as meaning that the insurer's obligation to make a payment is triggered "when liability attaches," rather than when "the liability has been discharged, as by payment of the judgment by the insured." *Quinlan*, 575 So. 2d at 355.  It

---

[35]   R. Doc. 21-1 at 5.

should thus be treated as a policy against liability.  *Id.* (treating policy as one against liability when policy was ambiguous as to whether insurer's obligation to pay was triggered when liability attached to insured or when the insured paid its liability).

For example, "Loss" is defined as "the amount the Insured becomes legally obligated to pay as a result of a Claim, including but not limited to Defense Expenses, damages, [and] judgments."[36]  A reasonable interpretation of this language is that the insurer must pay for judgments imposed against, rather than paid by, the insured.  *See Quinlan*, 575 So. 2d at 354-55 (treating an ambiguous policy as one for liability when insurer's obligation was not triggered by "payment of the judgment by the insured"); *Resolution Trust Corp. v. Ayo*, No. 92-0882, 1992 WL 245552, at *3 (E.D. La. Sept. 9, 1992) (treating a policy as one for liability when insurer must cover loss the insured "become[s] legally obligated to pay"); *compare Lustig*, 975 F.2d at 1167 (treating policy as an indemnification contract when insurer's obligation to pay is triggered by the insured actually "sustaining" a loss); *State through Dept. of Trans. And Dev. v. Acadia Parish Police Jury*, 631 So. 2d 611, 614 (La. App. 3d Cir. 1994) (treating policy as an indemnification contract when insurer's obligation is triggered by insured

---

[36]     *Id.* at 9.

"sustain[ing] loss"); *Sanders v. Nexion Health at Minden, Inc.*, 2018 WL 4265256, at *3 (W.D. La. Sept. 6, 2018) (treating policy as an indemnification contract when insurer will only "reimburse" losses the insured has "paid"). Further, the policy provides that the insured must notify the insurer of claims "as soon as practicable after the date a Claim is first made,"[37] rather than after the insured makes a payment on such a claim. This also supports a reasonable interpretation that "a cause of action accrues when liability attaches," rather than when "the liability has been discharged." *Compare Acadia Parish Police Jury*, 631 So. 2d at 614 (treating policy as an indemnification contract when the insured could "not bring an action under the policy until 90 days after filing proof of loss"). Finally, although not dispositive, the policy itself refers to the "insuring agreement[]" as "Directors and Officers Liability."[38] The Court finds that the policy in issue is not unambiguously one for indemnification rather than liability. Accordingly, the Court will construe it as a policy against liability. Plaintiff is thus able to avail himself of the direct action statute under Louisiana law.

A "direct action" for purposes of section 1332(c)(1) is "an action against an insurer that faces liability because of its relationship with the absent (but

---

[37]   *Id.* at 19-20.
[38]   *Id.* at 5.

otherwise liable) insured party." *Med. Research Ctrs., Inc. v. St. Paul Prop. & Liab. Ins.*, 303 F. Supp. 2d 811, 814 (E.D. La. 2004) (internal quotation marks omitted); *see also Grefer v. Scottsdale Ins. Co.*, 207 F. Supp. 2d 546, 548 (2001) ("A direct action, for purposes of 28 U.S.C. § 1332(c)(1), is one in which the victim or injured party is permitted to sue the tortfeasor's insurance carrier directly for the insured's tortious conduct without first obtaining a judgment against the tortfeasor."). Because Lloyd's "faces liability because of its relationship with the absent . . . insured party," here Columbus Holdings, this dispute constitutes a "direct action" under section 1332(c). *Med Research Ctrs., Inc.*, 303 F. Supp. 2d at 814.

Lloyd's only argument against the application of section 1332(c)(1) to this dispute is that plaintiff first raised its argument about the statute in its reply brief. Lloyd's thus contends that the argument has been waived.[39] But the Court may decide issues pertaining to its subject matter jurisdiction *sua sponte* at any time. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.). Further, the Court granted Lloyd's leave to file a sur-reply in which Lloyd's had the opportunity to address the argument. There is thus no prejudice to Lloyd's.

---

[39]    R. Doc. 31 at 2-3.

Accordingly, the Court finds that Lloyd's must be deemed to be a citizen of Louisiana and South Carolina for purposes of this lawsuit.[40] Lloyd's has thus failed to meet its burden of establishing that removal was proper. *See Allen*, 63 F.3d at 1335 ("[I]t is well settled that the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists.").

### B.  Improper Joinder

Lloyd's argues that if the Court considers Lloyd's to be a citizen of Louisiana pursuant to section 1332(c), the Court should dismiss it as an improperly joined party and retain jurisdiction over the matter.[41]  A removing party can establish improper joinder by showing "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to

---

[40]    Much of the parties' briefing is focused on whether Lloyd's properly alleged the citizenship of every subscriber to the insurance policy at issue.  Ordinarily, this would be the focus of the jurisdictional inquiry. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857-58 (5th Cir. 2003) (given that Lloyd's is structured "as a self-regulating entity which operates and controls an insurance market" rather than "an insurance company," courts focus on the citizenship of "the individual Names who belong to the various Syndicates that have subscribed to a policy" for purposes of diversity jurisdiction).  But because the Court concludes that Lloyd's is deemed to share the citizenship of its insured for purposes of this lawsuit, it need not address these arguments.

[41]    R. Doc. 31 at 3-5.

establish a cause of action against the non-diverse party in state court." *Smallwood*, 385 F.3d at 573.

Lloyd's contends that plaintiff is unable to establish a claim against it in state court because plaintiff is judicially barred from bringing a suit against Columbus Holdings or any of its property and/or assets.[42]   But Lloyd's cites no authority for the proposition that because claims cannot be brought against an insolvent entity, they likewise cannot be brought against the entity's insurer.   The direct action statute that plaintiff invokes in his complaint expressly contemplates such actions.   *See* La. Rev. Stat. 22:1269(B)(1)(b) (an injured party "shall have a right of direct action against the insurer within the terms and limits of the policy," and "such action may be brought against the insurer alone" if "[t]he insured is insolvent").   As discussed in Section III.A, *supra*, the statute reflects "Louisiana's intent for the insolvency of the insured not to release the insurer from the payment of damages to injured parties."   *Sosebee*, 701 F.3d at 1022.

Lloyd's also argues that if plaintiff were to successfully recover against Lloyd's, plaintiff would "[o]btain a judgment against Columbus Holdings' assets" in violation of the liquidation order, because the insurance policy is

---

[42]      *Id.* at 4.

"property of the receivership entity."[43]   Lloyd's cites no authority in support of this argument, either.   Further, this position appears to conflate the insurance policy with insurance proceeds.   If plaintiff were to prevail on his claims against Lloyd's, he would receive the proceeds of the insurance policy, not the insurance policy itself.   The Fifth Circuit has made clear that "while insurance policies are generally property of the estate, the proceeds of liability insurance policies, unlike first party policies, generally are not." *Sosebee*, 701 F.3d at 1023; *see also In re Edgeworth*, 993 F.2d 51 (5th Cir. 1993) ("[U]nder the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy," so such proceeds are not "part of the estate."); *In re Babcock & Wilcox Co.*, 69 F. App'x 659, at *1 (5th Cir. 2003) (holding that proceeds of a liability policy that "inure to the benefit of plaintiffs claiming injury" against the insured were not assets of the estate).[44]

---

[43]   R. Doc. 31 at 5; R Doc. 21 at 5.

[44]   The insolvent parties are in a receivership; they are not parties to a bankruptcy proceeding in federal court.   Nevertheless, "because there are comparatively few cases examining the ownership of insurance proceeds in the context of a receivership, it is appropriate to consider the treatment of the issue under bankruptcy law."   *SEC v. Narayan*, No. 16-1417, 2017 WL 447205, at *4 (N.D. Tex. Feb. 2, 2017) (quotation omitted) (collecting cases).

Lloyd's does not address this line of controlling authority in its briefing. It has thus given the Court no reason to conclude that the D&O policy proceeds are property of the estate. Because Lloyd's does not brief this issue, nor does it advance other arguments in support of its argument that it should be dismissed from this matter, Lloyd's has failed to bear its "heavy burden" of establishing that it was improperly joined. *Smallwood*, 385 F.3d at 572.

## IV.   CONCLUSION

For the foregoing reasons, the Court REMANDS the case to the 22nd Judicial District Court, Parish of St. Tammany.

New Orleans, Louisiana, this __9th__ day of November, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE